UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

          Plaintiff,

vs.                          REPORT AND RECOMMENDATION

Robin Greg Kelly, Sr.,

          Defendant.       Crim. No. 08-109 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant Robin Greg Kelly, Sr:

    1.    The Defendant's Motion to Dismiss for Destruction of Evidence [Docket No. 37]; and

    2.    The Defendant's Motion to Suppress Statements, Admissions, and Answers [Docket No. 39].

A Hearing on the Motions was conducted on September 2, 2008, at which time, the Defendant appeared personally, and by Caroline Durham, Assistant Federal Defender;

and the Government appeared by Tricia A. Tingle, Assistant United States Attorney.[1] For reasons which follow, we recommend that each of the Defendant's Motions be denied.

## II. Factual Background

The Defendant is charged with one (1) Count of Aggravated Sexual Abuse, in violation of Title 18 U.S.C. §§1151, 1153(a), 2241(a), 2246(2)(A), and 2246(2)(B), that occurred on or about December 22, 2007; one (1) Count of Arson, in violation of Title 18 U.S.C. §§ 7(3), 81, 1151, and 1153(a), that occurred on or about April 2, 2008; and one (1) Count of Assault with a Dangerous Weapon, in violation of Title 18 U.S.C. §§113(a)(3), 1151, and 1153(a), that also occurred on or about April 2, 2008. See, Docket No. 32. As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[1]At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on certain of the legal issues that were raised by the Defendants' Motions. Leave was granted, and therefore, the last submission on the issues was received on October 20, 2008, at which time, the Motions were taken under advisement. See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 676-77 (8th Cir. 1995).

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record." See, United States v. Santiago, 410 F.3d 193, 198 (5th Cir. 2005), cert.
(continued...)

At the Hearing, Michael J. Iverson ("Iverson"), who is a Special Agent with the Federal Bureau of Investigation ("FBI"), in Bemidji, Minnesota, and who responds to violent crimes on the Red Lake Indian Reservation, testified at the instance of the Government. Iverson testified that, at approximately 4:20 o'clock a.m., on April 2, 2008, the Red Lake Public Safety Department ("RLPSD") was dispatched to S.K.B.'s residence. When the officers arrived S.K.B., Rebecca Neadeau, and Armella Neadeau, were being evacuated by another RLPSD officer to the local hospital.

After the evacuation, the officers noticed that the Defendant was alone in S.K.B.'s house. The Defendant repeatedly exited the residence onto a porch and exchanged words with the officers. At that point, the Defendant had not been given any <u>Miranda</u> warning. See, <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). The officers repeatedly asked the Defendant to surrender, but the Defendant was defiant, and confrontational, and stated that "he was ready and they were going to have it out,"

---

[2](...continued)
denied, 126 S.Ct. 1565 (2006). As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, <u>United States v. Moore</u>, 936 F.2d 287, 288-89 (6th Cir. 1991); <u>United States v. Prieto-Villa</u>, 910 F.2d 601, 610 (9th Cir. 1990).

<u>Suppression Hearing Transcript ("Tr."), Docket No. 49</u>, at p. 13, and that he had guns,

rifles, and shotguns, and that he would shoot the officers if they came into the

residence.

According to Iverson, Officer Richards ("Richards"), who is a police officer

with the RLPSD, reported that the Defendant said:

> He's a f***ing Marine and you think I didn't come here
> prepared, we're going to have it out. We're going to
> f***ing have it out, just try and come get me.

<u>Id.</u> at 14.

Iverson testified that Officer Branchard ("Branchard"), who is another police officer

with the RLPSD, reported that the Defendant stated:

> Hey, I'm giving you -- giving you one more shot to take me
> out.  If you don't, we're gonna have a shootout.  You better
> f***ing shoot me. * * * Is [S.K.B.] dead?  You don't know
> anything.  Those f***ing courts up here ain't s**t.

<u>Id.</u> at 16.

Branchard also reported that the Defendant said:

> You better f***ing back off, I got guns and I came
> prepared.  We're going to have this s**t out.  I'm shooting
> it out with you f***ers, get ready.  I'm ready,  I got a pipe
> bomb in here, I'm ready, I'll kill all of you.

<u>Id.</u> at 16-17.

In response to these comments, Branchard requested a K-9 unit.

According to Iverson, the officers repeatedly called S.K.B.'s house, but the

Defendant would not answer the phone, shouting instead:

> [O]h you trying to distract me, think I'm going to answer
> the phone, f*** you.

Id. at 17.

Branchard told the Defendant that they just wanted to talk.

Iverson testified that, at the same time, the Defendant was smoking a cigarette

on the porch.  The Defendant told the officers:

> When I finish this smoke we're going to dance, you hear
> me, we're gonna dance when I finish this.

Id. at 18.

The Defendant finished his cigarette at the top of the porch stairs, and went inside.

Soon after the Defendant exited the house and, as he left the house, the residence

became engulfed in flames.  There is some dispute where exactly the Defendant exited

the house, with Branchard and Richard reporting that the Defendant exited through

a living room window, which was approximately five feet off the ground, and Officer

Ybarra ("Ybarra"), who is another police officer with the RLPSD, recalling that the

Defendant exited through a basement window.

After exiting the window, the Defendant headed south towards Richard, Ybarra,

and Officer Pierre -- another police officer with the RLPSD -- who had their firearms

drawn.  The Defendant made his way towards the officers with a machete, but soon threw it to the ground.  The Defendant continued towards the officers until Branchard approached him from behind, and knocked the Defendant to the ground by striking him on the head with a flashlight.   The Defendant was arrested, and a search uncovered knives on his person.  The standoff had lasted from 4:20 o'clock a.m., until approximately 6:00 o'clock a.m.

The Defendant was taken to the Red Lake Police Department, where he was read his Miranda warnings, and where Iverson attempted to interview him, but the Defendant informed Iverson that he did not wish to speak about the incidents of either December 22, 2007, or April 2, 2008.  Later, during the course of the Defendant's transport to the Bemidji County Jail, for his appearance in Federal Court, Iverson and the Defendant did exchange a few words about the cut on the Defendant's head, and about intake procedures at the Jail.

### III.  Discussion

A.     The Defendant's Motion to Dismiss for Destruction of Evidence.

The Defendant contends that Count Two of the Superseding Indictment must be dismissed as a sanction for the Government intentionally destroying evidence, specifically the charred remains of S.K.B.'s home.  The Government responds that the

Defendant has failed to proffer any evidence of bad faith on the Government's part, and that the Defendant was placed on notice about a possible arson charge, and had time to investigate the scene of the fire if he were interested in doing so.  We address the parties' arguments in turn.

        1.     <u>Standard of Review.</u>  "The interest of the Government in any criminal prosecution 'is not that it shall win a case but that justice shall be done.'" <u>Dye v. Stender</u>, 208 F.3d 662, 665 (8th Cir. 2000), quoting <u>Lingle v. Iowa</u>, 195 F.3d 1023, 1026 (8th Cir. 1999), quoting in turn, <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935).  "'For this reason * * * the prosecution is required to divulge all evidence favorable to the accused that is material either to guilt or to punishment,' a rule known as the <u>Brady</u> rule."  <u>Id.</u>, see, <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963).  To prevail on a <u>Brady</u> duty-to-disclose claim, a defendant must first identify some specific exculpatory evidence that was known to the prosecution before his Trial, but which was not known to him until after the Trial.  See, <u>United States v. Gonzales</u>, 90 F.3d 1363, 1368 (8th Cir. 1996).  In addition, a defendant "must show that:  (1) the prosecution suppressed evidence, (2) that the evidence was favorable to the accused, and (3) the evidence was material."  <u>Id.</u>, see also, <u>Banks v. Dretke</u>, 540 U.S. 668, 691

(2004); United States v. Carman, 314 F.3d 321, 324 (8th Cir. 2002); Johns v. Bowersox, 203 F.3d 538, 545 (8th Cir. 2000).

Evidence will only be material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Clay v. Bowersox, 367 F.3d 993, 1000 (8th Cir. 2004), quoting United States v. Bagley, 473 U.S. 667, 682 (1985); see also, Morales v. Ault, 476 F.3d 545, 554 (8th Cir. 2007), citing Strickler v. Greene, 527 U.S. 263, 281-82 (1999). A reasonable probability exists when the "favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Burton v. Dormire, 295 F.3d 839, 847 (8th Cir. 2002), quoting Kyles v. Whitley, 514 U.S. 419, 435 (1995), see, Dye v. Stender, supra at 666, quoting United States v. O'Conner, 64 F.3d 355, 358 (8th Cir. 1995). "Materiality 'is not established through the mere possibility that the suppressed evidence might have influenced the jury.'" United States v. Carman, supra at 324, quoting United States v. Ryan, 153 F.3d 708, 711 (8th Cir. 1998). In the absence of materiality, any failure to disclose information to a defendant will be considered harmless error. See, Dye v. Stender, supra at 665, citing United States v. Williams, 194 F.3d 886, 889 (8th Cir. 1999).

"To establish a due-process violation when a state destroys evidence that is potentially useful to a criminal defendant, the defendant must show that the state acted in bad faith." Morales v. Ault, 476 F.3d 545 (8th Cir. 2007), citing Illinois v. Fisher, 540 U.S. 544, 547-58 (2004); see also, Arizona v. Youngblood, 488 U.S. 51, 58 (1988). "The Supreme Court has held that the state's failure to preserve evidence does not constitute a denial of due process unless the state acted in bad faith, the evidence had apparent exculpatory value and comparable exculpatory evidence was not reasonably available to the defendant." United States v. Purkey, 428 U.S. 738 (8th Cir. 2005), citing United States v. Malbrough, 922 F.2d 458, 463 (8th Cir. 1990), cert. denied 501 U.S. 1258 (1991); see also, California v. Trombetta, 467 U.S. 479, 488-90 (1984).

2.    Legal Analysis.   The Defendant contends that, without the remains of the burnt house, he does not have the ability to provide the Court, or a Jury, with evidence to establish his innocence. See, Defendant's Memorandum in Support, supra at 7. Although the Defendant makes those conclusory claims, he has not presented any evidence to demonstrate that the Government acted in bad faith. The Defendant points to the removal of the remains of S.K.B.'s house, before the arson charge was

filed against him, as evidence of the Government's bad faith.[3]  Our Court of Appeals has held that the destruction of evidence does not constitute bad faith when the Government is not culpable for the destruction.  See, <u>United States v. Iron Eyes</u>, 367 F.3d 781, 780 (8th Cir. 2004)(no evidence of bad faith where police allowed an individual to destroy mattress and bedding which may have been potentially useful to the Defendant); <u>United States v. Doty</u>, 714 F.2d 761, 764-65 (8th Cir. 1983)(finding no bad faith on the part of Federal officials where samples were taken before State officials destroyed the marijuana plants).  Here, after the scene had been inspected by a Fire Marshal, and other investigative work finished, S.K.B. began to rebuild her home.  The Government cannot be held accountable for the interest of a private citizen to rebuild her home, nor does that fact reflect that the Government allowed S.K.B. to rebuild her home in an effort to suppress vital exculpatory evidence.

Furthermore, our Court of Appeals has repeatedly found that the destruction of evidence is not an act of bad faith when some evidence of the crime was preserved. See, <u>United States v. Gray</u>, 128 F.3d 1109, 1110 (8th Cir. 1997)(no bad faith where agent first photographed and sampled bottles containing ephedrine tablets before

---

[3]At the Hearing, and even now, it is unclear when the remains of the house were removed, or when any rebuilding started.  See, <u>Docket No. 49</u>,  p. 7, L. 23-25.

destroying the bottles); United States v. Scoggins, 992 F.2d 164, 167 (8th Cir. 1993) (before destruction mandated by departmental policy, police sampled and video taped marijuana plants); United States v. Malbrough, supra at 461, 463 (it was not bad faith to destroy marijuana plants after receiving Court Order to take random samples of the plants, and approval for their destruction); United States v. Doty, supra at 764-65; see also, United States v. Revolorio-Ramo, 468 F.3d 771, 775 (11th Cir. 2006)(no bad faith where the Coast Guard destroyed a fishing vessel but preserved the condition of the boat with still and video photographs, even if most of the images were unusable); United States v. Newsome, 322 F.3d 328, 334 (4th Cir. 2003)(no suppression of evidence required where, although the Government did not preserve the logs stolen from a National Forest, the defendant was given an opportunity to view photographs and cookies cut from the logs, have access to mill records, and an opportunity to cross-examine mill employees, and Government Agents).

The Defendant has not produced any evidence to demonstrate bad faith on the part of the Government in the removal of the house's charred remains. While, conceivably, the remains could have disclosed something of exculpatory value, this is not an instance where the Government conducted its own investigation, and then sought to deprive the Defendant of the same opportunity. On the basis of this Record,

the evidence derived from the remains of the house was obtained, independently, by the Minnesota State Fire Marshal, who documented his investigation of the site with a report, and photographs, which have been made available to both parties in this proceeding.

The Government has gained no advantage from evidence which is available to all. Moreover, the Government represents, and the Defendant does not deny, that the Government had disclosed the probability that the Defendant would face an arson charge. Nonetheless, the Defendant has not shown that he had intended to investigate the site, and that it was no longer available for examination, nor has he shown what specific or general evidence would have been disclosed that had exculpatory value. In any event, any expert retained by the Defendant has access to the same evidence that is available to the Government, in order to draw such defenses as the evidence warrants. Had the Defendant desired more, he was at liberty to seek an Order of the Court that would have enjoined any removal of the materials from the scene, until the defense had completed its own investigation. Accordingly, we recommend that the Defendant's Motion to Dismiss for Destruction of Evidence be denied.

B.     The Defendant's Motion to Suppress Statements, Admissions, and Answers.

The Defendant maintains that his statements should be suppressed because he was not afforded any <u>Miranda</u> warning, even though, during the standoff on April 2, 2008, he was assertedly in the custody of the RLPSD.  We conclude, however, that the Defendant's statements were wholly spontaneous, and were not the product of any custodial interrogation. As a result, we find no basis upon which to suppress the Defendant's statements to law enforcement.

       1.    <u>Standard of Review.</u>  Government agents are not required to administer <u>Miranda</u> warnings to everyone they question.  See, <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495 (1977).  Rather, <u>Miranda</u> warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'" <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994), quoting <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966); <u>United States v. Helmel</u>, 769 F.2d 1306, 1320 (8th Cir. 1985); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 428-29 (1984).  Once a suspect is in police custody, and subject to interrogation, the suspect must be informed of his constitutional right to remain silent, and to be represented by legal counsel during questioning.  See, <u>Miranda v. Arizona</u>, supra at 473; see also, <u>Dormire v. Wilkinson</u>, 249 F.3d 801, 804 (8th Cir. 2001), cert. denied, 534 U.S. 962 (2001).

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, supra at 322, quoting California v. Beheler, 463 U.S. 1121, 1125 (1983). A list of common indicia of custody, that has been identified by our Court of Appeals, includes the following:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir 1990); see United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005); United States v. Axsom, 289 F.3d 496, 500, 501 (8th Cir. 2002).

However, those factors "are by no means exhaustive and should not be applied ritualistically, counting indicia which contribute to custody against those which detract." United States v. Brave Heart, 397 F.3d 1035, 1039 (8th Cir. 2005), citing

United States v. Czichray, supra at 827.  Instead, the Griffin factors serve as a guide in the resolution of the ultimate inquiry of "whether the defendant was restrained as though he were under formal arrest."  See, United States v. Czichray, supra at 827.

Whether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination.  See, Dickerson v. United States, 530 U.S. 428, 433-34 (2000).  For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession."  Dickerson v. United States, supra at 434, citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As the Supreme Court has recently explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.]  See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961)("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant").  The determination "depend[s] upon a weighing of the circumstances of pressure against the

- 15 -

> power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507 U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954).  See also, Withrow v. Williams, supra at 693 (listing the applicable considerations).

2.   Legal Analysis.  The Defendant argues that he was in custody during the standoff, because he was not free to leave S.K.B.'s property since the RLPSD had that property surrounded.   Since the Defendant was not under formal arrest at the time he made the statements, we must decide whether his freedom of movement was restrained to a degree associated with formal arrest.  To determine if the Defendant was in custody, when he made the statements in question, we turn to the Griffin factors.

It is undisputed that the Defendant was not under arrest during his standoff with the RLPSD and, in fact, the RLPSD was still trying to secure his arrest when the statements were made. Also, despite the Defendant's claim that he did not have freedom of movement during the alleged interrogation, the Record shows that the Defendant was free to move about, at least in the confines of S.K.B.'s home, because he was not physically restrained, he entered and exited the house on several occasions at will, the officers maintained their distance from the Defendant, the Defendant smoked cigarettes, cursed and threatened the officers, and allegedly started the house on fire.

Quite plainly, if RLPSD had control over the Defendant's actions, he would not have been able to engage in those acts. The simple fact is that several persons were taken from those premises, after they had escaped the house, and were transported to a local medical facility for injuries they had sustained. The officers were attempting to diffuse the explosiveness of the situation, by trying to calm the Defendant. Even in that process, we find no deception or strong arm tactics by law enforcement, and the Defendant was under no compulsion to respond to the RLPSD's requests to talk. For obvious reasons, other Courts have recognized that individuals, who are positioned in similar police standoff situations, were not in custody. See, United

States v. Mesa, 638 F.2d 582, 584-589 (3rd Cir. 1980)(individual who had barricaded himself in a hotel room surrounded by FBI agents was not in custody because the FBI had no control over his immediate actions nor was he forced to answer their questions); Manzella v. Senkowski, 2004 WL 1498195 at *24-25 (W.D.N.Y. July 2, 2004)(individual was not entitled to Miranda warnings where he made inculpatory statements to deputies during an eight-hour standoff because the deputies had no immediate control over his actions).  Similar to the circumstances in those cases, the RLPSD did not have any control over the Defendant's actions, and therefore, we find and conclude that the Defendant was not in custody when he made his statements to law enforcement.[4]

---

[4] Furthermore, even if the Defendant was in custody, any failure to give him Miranda warnings would be covered under the "public safety" exception.  The public safety exception, which was first enunciated in New York v. Quarles, 467 U.S. 649, 659 (1984), law enforcement officers may question a suspect concerning matters "necessary to secure their own safety or the safety of the public" without administering a Miranda warning.  Id. at 659.  "[T]he availability of the exception does not depend upon the motivations of the individual officers involved" since, "[i]n a kaleidoscopic situation * * * where spontaneity rather than adherence to a police manual is necessarily the order of the day, the application of the exception * * * should not be made to depend on the post hoc findings at a suppression hearing concerning the subjective motivation of the arresting officer."  Id. at 656.  In adopting such an exception to Miranda, the Court concluded "that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-
(continued...)

Even if we were to find that the Defendant was in custody, "Miranda has no application to statements * * * that are voluntarily offered and are not a product of either express questioning or any police practice reasonably likely to evoke an incriminating response." United States v. Griffin, 922 F.2d 1343, 1357 (8th Cir. 1990), citing United States v. McGauley, 786 F.2d 888, 891 (8th Cir. 1986), and United States v. Webster, 769 F.2d 487, 492 (8th Cir. 1985). At the Hearing, Iverson testified that, during the standoff, the RLPSD were making statements similar to: "Come on, just talk to us," and "[w]e want to talk to you." See, Tr. at p. 24. Such promptings do not constitute interrogation, or its functional equivalent, since they were never intended to elicit an incriminating response. See, Rhode Island v. Innis, 446 U.S. 291, 301 (1980); United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005), cert. denied 547 U.S. 1082 (2006)("Interrogation includes not only express questioning by law enforcement

---

[4](...continued)
incrimination." Id. at 657-58; see also, United States v. Luker, 395 F.3d 830, 833-34 (8th Cir. 2005), cert. denied, 546 U.S. 831 (2005); United States v. Williams, 181 F.3d 945, 953 (8th Cir. 1999); United States v. Lawrence, 952 F.2d 1034, 1036 (8th Cir. 1992), cert. denied, 503 U.S. 1011 (1992); United States v. Knox, 950 F.2d 516, 519 (8th Cir. 1991).

While the public safety exception is intentionally "narrow," Illinois v. Perkins, 496 U.S. 292, 308 (1990), we find it applicable to the RLPSD officers requests to talk with the Defendant. Any attempt by the officers to get the Defendant to talk was solely to secure his, and their own safety, and to diffuse an already volatile situation.

officers, but also words or actions that officers should know are reasonably likely to elicit an incriminating response from a suspect."), citing <u>United States v. Mendoza-Gonzalez</u>, 363 F.3d 788, 795 (8th Cir. 2004); <u>United States v. Hatten</u>, 68 F.3d 257, 261 (8th Cir. 1995), cert. denied, 516 U.S. 1150 (1996).

During cross-examination, Iverson agreed that the RLPSD officers likely believed that, if they could get the Defendant to communicate with them, they had some chance of diffusing the situation. <u>Id.</u> at p. 26. Since the RLPSD's requests to engage the Defendant in conversation were not intended to elicit any incriminating responses, we find that those requests cannot be considered interrogation. Therefore, the statements made by the Defendant were voluntary and spontaneous, and not subject to suppression. See, <u>United States v. Hatten</u>, 68 F.3d 257, 262 (8th Cir. 1995) cert. denied 516 U.S. 1150 (1996)("[A] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of Miranda warnings."), citing <u>Rhode Island v. Innis</u>, supra at 299; see also, <u>United States v. Chipps</u>, 410 F.3d 438, 444 (8th Cir. 2005)(the defendant's uninitiated comments made during fingerprinting that he knew the FBI was looking for him were spontaneous); <u>United States v. Head</u>, supra at 928-29 (Agent's request "to talk to him about what had occurred that morning" was not

interrogation and the defendant's response to the request was voluntary); United States v. Spivey, 51 Fed.Appx. 188, 189 (8th Cir. 2002)(defendant's statement of "Yea, you got me. I did it" during a search of his car, and without police questioning, was voluntary); United States v. Hayes, 120 F.3d 739, 744 (8th Cir. 1997)(defendant's statement was voluntary when made prior to any questioning, and before being read her Miranda rights); United States v. Kalter, 5 F.3d 1166, 1168-69 (8th Cir. 1993) (defendant's admission, that the gun removed from his car belonged to him, was voluntary and spontaneous when made prior to arrest and interrogation).

We also find no evidence that police coercion, or the length, location, or continuous nature of the alleged questioning, overwhelmed the Defendant's will or self-determination so as to elicit his statements against his will. Furthermore, since we have already concluded that the Defendant was not in custody, during the standoff, he was not entitled to a Miranda warning. Accordingly, we recommend that the Defendant's Motion to Suppress should be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Motion of the Defendant Robin Greg Kelly, Sr. to Dismiss for

Destruction of Evidence [Docket No. 37] be DENIED.

2.      That the Motion of the Defendant Robin Greg Kelly, Sr. to Suppress

Statements [Docket No. 39] be DENIED.


Dated:  October 28, 2008                          *s/Raymond L. Erickson*
                                                  Raymond L. Erickson
                                                  CHIEF U.S.  MAGISTRATE JUDGE


NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn.

LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and

Recommendation by filing with the Clerk of Court, and by serving upon all parties **by**

**no later than November 17, 2008**, a writing which specifically identifies those

portions of the Report to which objections are made and the bases of those objections.

Failure to comply with this procedure shall operate as a forfeiture of the objecting

party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than November 17, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.